454

## Richmond

GEORGE D. BECKNER V. COMMONWEALTH OF VIRGINIA.

November 20, 1939.

Record No. 2187.

Present, All the Justices.

*S. R. Price,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Walter E. Rogers, Special Assistant,* for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

George D. Beckner, having been elected high constable for the city of Roanoke, Virginia, duly qualified as such officer on May 7, 1937. The major portion of his duties required of him the collection of moneys from debtors under execution from judgments granted by the Civil and Police Justice's court of his city.

On January 16, 1939, the Auditor of Public Accounts caused to be made an audit of the books of the high con-

stable for the period from May 7, 1937 to January 14, 1939.

The audit discloses that, during the said period, Beckner, as high constable, collected on judgments the sum of $32,808.73. Out of this sum he paid on commissions to himself, remittances to judgment creditors and remittances to officers $30,828.73, leaving an unremitted balance of $1,980.00 due to judgment creditors. He had a bank account of $576.99 in his official name and $659.16 cash on hand, a total of $1,236.15 or $743.85 less than the full amount belonging to judgment creditors.

The auditor's report of unremitted collections from May 15, 1937 to January 14, 1939, showed a list of 253 creditors entitled to the various sums making up the total of $743.85. 243 of these creditors were entitled to sums ranging from $1.50 to $20.00, and only 10 to amounts over $20.00. The date of the collections and the names of the numerous judgment creditors and judgment debtors were given.

While the unremitted collections included the sum of $82.00, collected for the city of Roanoke, in the name of the Commonwealth, there were sufficient funds both in cash and in bank to the credit of the high constable to pay same. The larger portion of this amount had been collected within thirty days of the audit. Witnesses were unable to testify that any portion of the amount collected for the city had been misused or misapplied. The State of Virginia had no interest or claim of ownership in any of the moneys collected.

Beckner employed three assistants in his office. He kept an account in one bank in his official name, and in another in his individual name. The collections on the judgments were usually made in small partial payments. He testifies that, as the collections accumulated, his usual practice was to deposit the whole of the first collections on a judgment in his official account without deducting anything for his commissions; and that during the two years in question, he had withdrawn from this account various sums to pay personal and office expenses, but always thought he had a

sufficient amount of commissions to cover such withdrawals. He said his first notice that he had overdrawn his commissions was received during the audit, and he immediately told the auditor and his representatives that he would make the deficiency good. The trial court refused to allow him to show that he did, on February 20, 1939, about two weeks after the completion of the audit, make good the shortage by depositing a sufficient sum in bank to his credit as high constable.

No creditor testified against him or complained of failure to receive any money due him. Witnesses, including creditors, attorneys for creditors and others, attested the good reputation of the accused.

On February 22, 1939, an indictment was rendered against Beckner, which, so far as is necessary to be quoted, is in the following language:

"That GEORGE D. BECKNER, heretofore, to-wit: on the . . . . . . days of January, 1939, and at divers and sundry times between May 19, 1937, and January 15, 1939, * * * being then and there High Constable, * * * by virtue of his public office as such High Constable, did receive and take into his possession certain funds, to-wit: $743.85, belonging to judgment creditors and collected by him, the said GEORGE D. BECKNER, upon executions against various judgment debtors and in favor of certain judgment creditors, issued by the Civil and Police Justice's Court for the City of Roanoke, Virginia, and then and there did have in his custody and possession said public funds and money, as aforesaid, in the sum of $743.85, of the true and lawful currency and coinage of the United States of America, coming into the hands of him, the said GEORGE D. BECKNER, as such agent and duly elected and qualified High Constable of the said City of Roanoke, did then and there default in the payment of said sum of $743.85, to said judgment creditors, he, the said GEORGE D. BECKNER, having previously knowingly, wilfully and feloniously applied and used said sum of $743.85, in a manner and for a purpose not provided for by law; and that he, the said GEORGE

D. BECKNER, on said date and during the said period of time prior thereto, knowingly, wilfully and feloniously did misuse, misappropriate, embezzle and convert to his own private and personal use the said sum of $743.85, public funds and property of said judgment creditors as aforesaid, otherwise then by paying said sums of money, aggregating $743.85 over to said judgment creditors, as required by law; and that he, the said GEORGE D. BECKNER, the said sum of $743.85, as aforesaid, did then and there knowingly and feloniously embezzle, steal, take and carry away."

Upon this indictment, Beckner was found guilty and his punishment fixed by a jury at one year in the penitentiary and a fine of $250. The trial court refusing to set aside the verdict, Beckner has prosecuted this writ of error.

There are numerous assignments of error, but the principal question is whether the moneys collected by a constable, upon execution against judgment debtors and held to the credit of judgment creditors, are public funds or moneys, where there is no evidence that any of the moneys alleged to have been misused, misapplied or embezzled were funds belonging to the State or any subdivision thereof.

The Commonwealth contends that all moneys received by a public official in the performance of his official duties imposed by law are public moneys regardless of whether they are to be paid to or held for the Commonwealth, or any subdivision thereof, or are to be held for the benefit of private individuals. For support it relies upon section 362 of the Tax Code (Virginia Code 1936, Appendix, page 2513), which reads as follows:

"No treasurer or any other person handling public money shall apply, disburse, or use any part of the public money held by him in any manner or for any purpose other than the manner and purposes provided by law except by inadvertence. Any violation of this section, when such fund so applied, disbursed, or used shall exceed fifty dollars, shall be deemed a felony and shall be punished by a fine of not less than two hundred and fifty dollars, nor more than one thousand dollars, and confinement in the State penitentiary

for not less than one year, nor more than five years; when such funds so applied, disbursed or used in violation of this section shall be less than fifty dollars such violation shall be punishable as a misdemeanor."

The indictment was drawn in the terms of the above section of the Tax Code, and the case prosecuted as an offense thereunder. The trial judge concurred in the views of the attorney for the Commonwealth that the moneys involved were public moneys, and instructed the jury accordingly.

Section 362 of the Tax Code is a part of chapter 24, entitled "County and City Treasurers and the Collection of Taxes." The entire chapter from section 349 to 405, inclusive, deals exclusively with the collection and disbursement of taxes and public funds. No part thereof relates to the ownership or distribution of moneys belonging to private persons or individuals.

■ The phrase "public money," in the absence of a statute defining it, must be construed according to its usual meaning and common acceptation. In any particular case, its meaning may be governed by the context and intent with which it is employed.

■ The words "public moneys" distinguish the funds from moneys privately owned. Public funds are those moneys belonging to the State or to any city, county or political subdivision of the State,—or more specifically, taxes, customs and moneys raised by the operation of law for the support of the government or for the discharge of its obligations. 22 R. C. L. Public Funds, page 222; 50 C. J. page 854; *Smyer et al.* v. *United States,* 273 U. S. 333, 47 S. Ct. 375, 71 L. Ed. 667, 51 A. L. R. 780.

■ Money in the hands of a constable, collected under execution awaiting distribution to private owners, does not belong to the public. It represents funds held in trust for individual litigants, and not for the State or its political subdivisions. The character of the money is determined by its ownership rather than by the manner and means of its collection.

■ In some States the phrase "public money" has been defined by statute as money held by public officials in their official capacity. There is no such statute or definition in Virginia. It is not for the courts to create an offense by giving to words a meaning not given to them by the legislature or which they do not otherwise have.

■ Nor does the fact of the difficulty of securing a conviction for embezzlement, where there are so many separate owners of the various amounts of money in question, justify the courts in creating an offense in order to punish an accused for dereliction of duty. The expediency or necessity of relieving the difficulty must be left to the legislative jurisdiction.

The case of the *City of New York* v. *Fox*, 232 N. Y. 167, 133 N. E. 434, cited by the Commonwealth is not in point. That was a civil action and the nature of the funds as well as the manner of recovery was covered by statute.

■ Virginia Code 1936, section 3516o, does not support the contention of the Commonwealth. That section does not make it a crime for a public officer to fail to deposit his collections as such officer in a bank, but provides relief from his absolute liability if he does make such deposit in a bank.

■ Subscribing to these views, it is apparent that the proof did not follow the allegations of the indictment. The trial court should have sustained the motion to strike the evidence of the Commonwealth, since there was no proof of the misuse of public money.

In view of these conclusions, it is unnecessary to discuss the remaining assignments of error.

For the foregoing reasons, the judgment of the trial court is reversed, the verdict of the jury is set aside, and the defendant, George D. Beckner, is dismissed from further prosecution under the indictment herein.

*Reversed and dismissed.*